Filed 1/26/21  K.B. v. E.L. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| K.B.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>E.L.,<br><br>    Defendant and Appellant. | B297820<br><br>(Los Angeles County<br>Super. Ct. No. BF034950) |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence P. Riff, Judge.  Affirmed.

Law Office of Earl Robertson III and Earl Robertson III for Defendant and Appellant.

Michelman & Robinson and Reuben A. Ginsburg for Plaintiff and Respondent.

_____

Appellant E.L. (father) appeals from a postjudgment order denying his request to modify custody and requiring him to complete reunification counseling before resuming visitation with his son (minor, born 2007).  Finding no abuse of the family court's discretion, we affirm.

## BACKGROUND

I. *The 2016 Judgment*

The family court entered judgment in this parentage case in 2016.

Respondent K.B. (mother) was awarded sole legal and physical custody of minor.  Father was entitled to visitation on specified Saturdays and Sundays.  He was required to provide 48 hours' advance written notice of his planned activities with minor for mother to advise of "any necessary health-related precautions relating to them."[1]  Mother was to provide all meals and beverages for minor to consume during his visits with father; father was not to provide any additional food or beverages except for bottled water.

Father could attend school or extracurricular events involving minor even if they occurred during mother's custodial time.  Father was also entitled to at least one 45-minute call with minor each week.

Mother was required to provide written notice to father regarding all significant educational or health issues and to consult with him before making any significant decisions in those areas.

---

[1]     Minor has severe food and environmental allergies and also suffers from asthma and celiac disease.

II. *Father's Request for Order (RFO) to Modify Custody*

In March 2018, father filed an RFO to modify custody on the ground that mother had violated the 2016 judgment in numerous respects, including thwarting father's visitation. Father sought primary physical custody of minor and joint legal custody.

III. *Hearing*

The hearing on father's RFO to modify custody took place over the course of three days in January and March 2019. The family court heard testimony from father, mother, minor's maternal grandmother, and minor's maternal aunt.[2]

A family court services specialist who had interviewed minor also testified. She stated that minor had a "generally positive" perception of mother but a "generally negative" perception of father. Minor told her that he was scared of father because father had previously used his finger to flick the side of minor's head, father sometimes followed them, and minor sometimes had the feeling that father would not bring him back. Minor stated, "I just don't really want to see my father because he really stresses me out." The specialist believed minor when he said that he felt stressed out, but she did not believe that minor was "truly frightened of father" or that father had "injured" or neglected him.

---

[2]     In May 2018, mother filed a request for a domestic violence restraining order (DVRO) against father. The family court denied mother's request in November 2018, finding that she failed to carry her burden of proof. In deciding father's RFO, the family court also considered evidence received in connection with mother's DVRO request.

At the conclusion of the hearing, mother's counsel argued that minor had severe health issues that father did not know how to handle. Minor felt comfortable and safe with mother and had a stronger emotional bond with her. Reunification with father in a clinical setting would be an appropriate way to allow minor to bond with father.

Father's counsel contended that mother's violations of the 2016 judgment were designed to frustrate father's parental rights and constituted a significant change of circumstances. When asked by the family court if a series of counseling sessions between father and minor would be a "[g]ood idea or bad idea[,]" father's counsel stated: "I believe it's a great idea . . . . I believe that counseling sessions could definitely benefit this bond because [minor] needs someone to talk to, and I am sure that [father] will benefit from being in that type of environment, and . . . maybe they'll be able to better understand each other."

The family court took the matter under submission.

IV. *Ruling*

On March 21, 2019, the family court issued its ruling on father's RFO to modify custody.

A. <u>Factual findings</u>

The family court found that both mother and father were "in violation of the judgment in various and serious particulars." Mother's violations were "more pervasive and severe than father's" (fn. omitted), but both parents were "serial violators."

Mother had at times "improperly denied father visitation." Mother had also failed to comply with the judgment's requirements to keep father informed in writing of significant educational and health issues and to consult with him.

4

The family court agreed with father "that mother fe[lt] entitled to decide when and under what conditions father w[ould] see [minor] and that mother's behavior in this regard [was] improper gatekeeping." At other times, however, mother's "refusal to permit visitation [was] justified on account of father's failure to comply with the terms and conditions of the judgment."

The family court did not find that minor's "health conditions are such that father cannot properly care for [him] during father's periods of visitation." It expressed concern, but did not find, that mother had occasionally "used '[minor's] too sick' as an excuse to deny father visitation." It was also concerned, but did not find, "that father ha[d] been less than rigorous as to his responsibilities for his telephone/Skype time."

Finally, the family court found that the dispute between mother and father, as well as minor's "reluctance to see his father[,] pose[d] a substantial danger to his best interests."

B. <u>Orders</u>

The family court declined to modify legal or physical custody as set forth in the 2016 judgment.

The family court ordered mother to obtain, and provide to father, reports from minor's pulmonologist and allergist stating any limitations on activities necessary due to minor's health conditions. Father was ordered to "conform his activities with [minor] to adhere" to those limitations. If mother denied father visitation "on account of an asserted health issue," she was required to provide father with supporting documentation from a physician.

The family court also ordered father and minor to engage in counseling sessions prior to the resumption of father's visitation. The counselor was to first meet separately with father and minor

5

for a maximum of three sessions each. Father and minor were then to participate in a minimum of four conjoint sessions "with the goal of repairing their relationship."

V. *Notice of Entry of Order*

A minute order dated March 21, 2019—the same day that the family court issued its order on father's RFO—states: "The [c]ourt having taken the mat[t]er under submission on March 19, 2019, hereby rules as follows: [¶] The court makes its order pursuant to the Ruling on Submitted Matter signed and filed this date. [¶] Clerk is to give notice."

Directly below, on the same page, the following title appears in bold type: "CLERK'S CERTIFICATE OF MAILING/NOTICE OF ENTRY OF ORDER[.]" Immediately below that, the superior court clerk certified that it mailed the notice of entry of the minute order to mother and to father's counsel on March 21, 2019. The address listed for father's counsel is a post office box in Pasadena.

VI. *Appeal*

On May 21, 2019, father filed a notice of appeal from the family court's March 21, 2019, order.

**DISCUSSION**

I. *Timeliness of Appeal*

Father filed his notice of appeal 61 days after the superior court clerk mailed the notice of entry of the family court's order. If the clerk's mailing constituted proper service to father, father's appeal would be one day late, requiring dismissal. (Cal. Rules of Court, rule 8.104(a)(1)(A), (b) & (e).)

We invited the parties to submit letter briefs to address this issue. In his letter brief, father contends that the notice of entry was mailed to his counsel's post office box in Pasadena even

6

though that address never appeared on documents filed in the family court.[3]  Mother fails to address this contention.

The record supports father's position.  Because the notice of entry of order was not served to the address of record for father's counsel, service was improper.  (Code Civ. Proc., § 1013; Cal. Rules of Court, rule 8.104(a)(2).)  Accordingly, father's appeal is timely because it was filed within 180 days of the entry of the order.  (Cal. Rules of Court, rule 8.104(a)(1)(C).)

II.  *Denial of Father's Request to Modify Custody*

Father contends that the family court abused its discretion by denying his request to modify custody.

A.  Standard of review

We review a ruling on a request to modify child custody under the deferential abuse of discretion standard.  (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 415.)  A "court abuses its discretion if there is no reasonable basis on which the court could conclude that its decision advanced the best interests of the child."  (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124.)

B.  Relevant law

Once a permanent custody order is entered by a family court, "'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement."  (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956 (*Brown & Yana*).)  A parent seeking to modify a permanent custody order must

---

[3]  Father speculates that the post office box address was obtained by the superior court clerk through a search of his attorney's profile on the State Bar of California Web site.

7

"demonstrate[] 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest." (*Ibid.*)

C. <u>Analysis</u>

Given "the importance of stability and continuity in the life of a child, and the harm that may result from disruption of established patterns of care and emotional bonds" (*Burchard v. Garay* (1986) 42 Cal.3d 531, 541), a strong presumption existed that the status quo should be preserved by denying father's request to modify the custody arrangement set forth in the 2016 judgment. The family court could reasonably conclude that this presumption had not been rebutted and that it was in minor's best interest to remain in mother's sole physical and legal custody.[4] Mother had great familiarity with minor's health issues and strict dietary requirements, and minor had a generally positive perception of her compared to a generally negative perception of father. Under these circumstances, no abuse of discretion can be found.

Attempting to resist this conclusion, father contends that the family court failed to properly weigh the evidence and he critiques its credibility determinations. "In reviewing the lower court's ruling for abuse of discretion, we do not reweigh the evidence or evaluate the credibility of witnesses." (*Ryland Mews*

---

[4] The family court made no explicit finding regarding whether father had demonstrated a change of circumstances. It did not need to. Because father had the burden of showing that both a change of circumstances had occurred *and* that modifying custody would serve minor's best interests (*Brown & Yana*, *supra*, 37 Cal.4th at p. 956), the family court could deny father's request to modify custody based only on the conclusion that it was not in minor's best interests.

*Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 712.)
Those determinations are solely within the province of the trier of
fact, here the family court. (*As You Sow v. Conbraco Industries*
(2005) 135 Cal.App.4th 431, 454.)

Father also argues that the family court's refusal to modify
custody cannot be reconciled with its factual findings that were
adverse to mother. We disagree. The family court correctly
recognized that mother's violations of the 2016 judgment were a
factor it could consider in determining whether to modify custody.
(*Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 907.) But
it also correctly noted that such a factor had to "be seen in the
context of the best interest of . . . minor." The family court's focus
properly remained "on the best interests of [minor], and not on
penalizing" mother. (*In re Marriage of C.T. & R.B.* (2019)
33 Cal.App.5th 87, 107.)

III. *Counseling Order*

Father also challenges the family court's order requiring
him to participate in counseling as a precondition to resuming
visitation. We review for abuse of discretion. (*Montenegro v.
Diaz* (2001) 26 Cal.4th 249, 255.)

A. Relevant law

Family Code section 3190, subdivision (a),[5] provides that a
family court "may require parents . . . and the minor child, to
participate in outpatient counseling with a licensed mental
health professional, . . . for not more than one year, . . . if the
court finds both of the following:  [¶]  (1) The dispute between the
parents[ or] between the parent or parents and the child . . .

---

[5]     All further statutory references are to the Family Code
unless otherwise indicated.

9

poses a substantial danger to the best interest of the child.  [¶] (2) The counseling is in the best interest of the child."

The family court must "set forth reasons why it has found both of the following:  [¶]  (1) The dispute poses a substantial danger to the best interest of the child and the counseling is in the best interest of the child.  [¶]  (2) The financial burden created by the court order for counseling does not otherwise jeopardize a party's other financial obligations."  (§ 3190, subd. (d).)

B. <u>Analysis</u>

In light of the animosity between mother and father, minor's reluctance to see father, and minor's expressed fear of father, the family court's counseling order—with its express goal of repairing father and minor's relationship—was eminently reasonable.  Even father's counsel told the family court that such sessions between father and minor would be "a great idea" and could benefit their relationship.

Father contends that the family court failed to set forth reasons why it found that the dispute between mother and father posed a substantial danger to the best interests of minor, as required by section 3190, subdivision (d).  The reasons for the finding are readily discernable from the record.  The acrimonious relationship between mother and father and the stress it caused minor—a child already dealing with significant health issues— posed a substantial danger to his best interests.  And, the family court impliedly found that this change of circumstances justified the counseling order to the extent it modified visitation.

10

Father also disputes the applicability of section 3190, arguing that it was intended for cases involving child abuse or neglect.  He relies solely on *In re Chantal S.* (1996) 13 Cal.4th 196.  But that case is inapposite, as it held that section 3190 does not apply to juvenile dependency cases.  (*In re Chantal S., supra,* at p. 208.)

## DISPOSITION

The order is affirmed.  Mother is entitled to costs on appeal. <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ